<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____:
                                :
RALPH LEBRON,                   :
                                :  Civil Action No. 07-1284 (SDW)
             Petitioner,        :
                                :
        v.                      :        O P I N I O N
                                :
LYDELL SHERRER, et al.,         :
                                :
             Respondents.       :
_____:
```

**APPEARANCES:**

```
Ralph Lebron, Pro Se            Susan B. Gyss
#310101/ SBI 905859B            Hudson Co. Prosecutor's Off.
Northern State Prison           595 Newark Avenue
168 Frontage Road               Jersey City, NJ 07306
Newark, NJ 07114                Attorney for Respondents
```

**WIGENTON**, District Judge

     Petitioner Ralph Lebron, a prisoner currently confined at Northern State Prison in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Lydell B. Sherrer and Stuart Rabner, the former New Jersey Attorney General.

     For the reasons stated herein, the Petition must be denied.

**BACKGROUND**

As stated in the opinion of the Superior Court of New Jersey, Appellate Division:[1]

In denying [Petitioner's] PCR application, [the PCR judge] summarized the evidence:

[I]n November of 1997, Mr. Lebron and his friend, Va[z]quez, showed up at the Office Max in Secaucus where Mr. Lebron's girlfriend, or ex-girlfriend Maria Vitone, was working. She apparently wanted to break up with him. He was seen forcing her into a car. I think he was seen by two employees: a security guard at Office Max as well as the boss, Mr. Reynolds.

It is said by Ms. Vitone in her statement later that Mr. Lebron held a knife to her, threatened to kill her, but the boss, Mr. Reynolds, seeing her – not hearing, but seeing her being put into the car, became alarmed and started to follow Va[z]quez and Lebron in the car, but stopped when Lebron got out of Va[z]quez's car and threatened him, whereupon Reynolds returned back to the Office Max, spoke with the security guard and summoned the police.

The police came, interviewed both of them, and . . . one of them, either Reynolds or the secuirty guard, managed to get the plate of the car and traced it to Va[z]quez or Va[z]quez's brother. Va[z]quez dropped Mr. Lebron and Ms. Vitone at an apartment. She didn't know whose apartment it was, a

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

basement apartment somewhere, which he
entered by breaking a basement window.

She alleges that he beat her there,
several times stabbed a bed on which she was
sitting, threatened to kill her, and she was
paged by her mother on a beeper, and he
forced her to leave an apartment [sic] to
call her mother to reassure her mother that
she was all right, but, of course, she was
not.  At that point they continued on to Mr.
Lebron's apartment, an apartment he shared
with his sister, Sandra, also known as Meeta.

Ms. Vitone says that she attempted to
escape the apartment on Belmont Avenue, but
that [defendant] – he caught up with her at
the corner, and beat her again, and continued
to threaten her, all the while abusing her
from the walk from one apartment to the
Belmont Avenue apartment, . . . and the
return back into the apartment that she
should look at all the men she could, because
this was going to be the last night that she
would live to see other men.

. . . .

The police continued to follow up and
find out where she is, and eventually get to
the home, and . . . at that point in time
that's when she's released, after first
apparently being – the police being told that
she was not there, that Mr. Lebron was not
there, and then when they insisted on coming
in, she was produced to them, and she
appeared to have . . . lacerations and
bruises on her face.

According to Ms. Vitone, when she called
the police to have them release Jason, and
when she told her mother that she was all
right, she was doing this under duress at
knife point.  According to the police
reports, Mr. Lebron also resisted them when
they came in, and they had to restrain him,
and . . . it was then, and only then, when he

3

was restrained that Ms. Vitone was safe in
the hands of police.

(Opinion of the Superior Court of New Jersey, Appellate Division,
State v. Lebron, A-0094-05T4 (Aug. 21, 2006), at pp. 4-5).

On November 30, 1998, defendant pled guilty to first-degree
kidnapping, fourth-degree unlawful possession of a weapon, and
second-degree witness tampering.  All other charges in the
indictment were dismissed.

On March 17, 1999, Petitioner was sentenced, pursuant to the
plea agreement, to an aggregate term of twenty years imprisonment
with 85% parole ineligibility, subject to the No Early Release
Act ("NERA"), N.J.S.A. 2C:43-7.2.

Petitioner appealed the sentence, and on February 11, 2003,
the Superior Court of New Jersey, Appellate Division ("Appellate
Division") affirmed the sentence.  The Supreme Court denied
certification on July 3, 2003.

On February 11, 2004, Petitioner filed a state petition for
post-conviction relief ("PCR").  The trial court denied relief on
July 11, 2005, without an evidentiary hearing.  The Appellate
Division affirmed the denial of relief on August 21, 2006 and the
Supreme Court of New Jersey denied certification on December 8,
2006.

Petitioner filed this habeas petition on March 15, 2007.
Petitioner also filed the relevant state court record, including
the plea transcript, sentencing transcript, sentencing appeal,

4

PCR brief, and the Appellate Division PCR opinion, as well as various other documents.  On April 17, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  An Order to Answer was issued and Respondents filed a Response to the Petition on August 1, 2007.

Petitioner asserts the following claims in this habeas petition, which were also raised in his PCR petition:

1-   The trial court committed reversible error in denying defendant's [Petitioner's] petition for post-conviction relief, as he was denied effective assistance of counsel, or in the alternative, defendant had presented a prima facie case that he was denied effective assistance of counsel and an evidentiary hearing should have been held.

2-   Trial counsel was ineffective in failing to interview and subpoena witnesses with relevant information which would have exonerated the defendant.

3-   Trial counsel was ineffective in failing to elicit a sufficient factual basis for defendant's guilty plea.

4-   The PCR court should have granted an evidentiary hearing because defendant presented a prima facie showing of ineffective assistance of counsel.

(Petition, ¶ 12).  It appears that the claims have been exhausted in the state courts.  Nonetheless, this Court finds that Petitioner's claims are clearly meritless.  Thus, the petition will be denied.[2]

---

[2]  Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

## DISCUSSION

**A.    Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in

6

light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the
Supreme Court explained the application of § 2254(d)(1).   The
Court analyzed subsection 1 as two clauses:  the "contrary to"
clause and the "unreasonable application" clause.  The Court held
that under the "contrary to" clause, "a federal court may grant
the writ if the state court arrives at a conclusion opposite to
that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts."  <u>Id.</u>
A federal court may grant the writ under the "unreasonable
application" clause, if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  <u>Id.</u> at 413.  Habeas relief may not be granted
under the "unreasonable application" clause unless a state
court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief.  <u>See</u> <u>id.</u> at
411; <u>see</u> <u>also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000),
<u>cert.</u> <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI</u>
<u>Albion</u>, 171 F.3d 877, 891 (3d Cir.), <u>cert.</u> <u>denied</u>, <u>Matteo v.</u>
<u>Brennan</u>, 528 U.S. 824 (1999).  Thus, the federal court must

decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690 at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on

8

habeas review." <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A <u>pro</u> <u>se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

## B.  **Petitioner's Ineffective Assistance of Counsel Claims**

Petitioner argues that counsel was ineffective for failing to interview and subpoena witnesses, who would have exonerated him, and for failing to elicit a sufficient factual basis for Petitioner's guilty plea.

Specifically, with regard to the claim regarding failure to interview witnesses, Petitioner argues that his sister could have testified that the circumstances surrounding the crime would support only a second-degree kidnapping offense, as opposed to the first-degree offense to which Petitioner pled guilty.  The

maximum sentence for a second-degree kidnapping offense would have been 10 years, as opposed to the 20-year sentence imposed on Petitioner for first-degree kidnapping.

With regard to the claim concerning the elicitation of the factual basis for the plea, it appears that Petitioner argues that the "yes/no" inquiry was insufficient, and that what he had maintained during the case (that he released the victim unharmed in a safe place prior to his apprehension), was not relayed to the Court during the plea, due to the yes/no nature of the factual basis.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

counsel's assistance was reasonable considering all the circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  See Strickland, 466 U.S. at 687.  Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence.

11

See id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

The Strickland standards also apply to guilty pleas alleged to be the result of ineffective assistance of counsel.  See Hill v. Lockhart, 474 U.S. 52 (1985).  To prevail on an ineffective assistance claim in a guilty plea context, a petitioner must show: (1) counsel's performance relating to the plea was deficient; (2) the deficient performance prejudiced Petitioner's case, because there was a reasonable probability that but for counsel's errors, the defendant would not have pled guilty, and would have gone to trial.  See Strickland, 466 U.S. at 687-88; Hill, 474 U.S. at 59.

In this case, the PCR court examined Petitioner's ineffective assistance claims.  Citing Strickland, the court found that Petitioner's counsel was not ineffective for failing to interview Petitioner's sister, as what Petitioner's sister would have said, "would in no way have persuaded the State to lessen this to a second degree in the face of evidence from three separate police officers and the victim herself, that she was not released until the police came to the door and demanded her release."  (Transcript of PCR hearing, pp. 25-26).  The PCR court continued: "So I cannot- I cannot say that [counsel's]

12

performance in failing to – if she did indeed fail to speak to or proctor this witness to the State, is deficient [or] subjected her performance to closer scrutiny." (Transcript of PCR hearing, p. 27).

The Appellate Division affirmed, finding:

As [the PCR judge] stated, in light of the overwhelming evidence against defendant, it cannot be said that the failure to interview defendant's sister presents a reasonable likelihood that defendant would succeed under the two-prong test established in <u>Strickland</u> . . . . Not only is defendant unable to demonstrate that defense counsel's performance was deficient for failing to interview defendant's sister, but defendant is unable to demonstrate that even if counsel's performance was deficient, a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." The evidence against defendant was simply overwhelming.

(Appellate Division opinion, p. 8, internal citations omitted).

With regard to the factual basis, the PCR court noted that Petitioner did not file a motion to withdraw his guilty plea, and stated: "I find that . . . there was a sufficient factual basis that it was given voluntarily, and that the judge explained the nature of the charge, and the consequences of the plea, and that that went on for – for quite some time." (Transcript of PCR hearing, p. 28). Furthermore, the PCR court found that appellate counsel was not inadequate for failing to raise the issues on direct appeal.

The Appellate Division also examined this issue on the merits and affirmed the PCR court, finding:

13

    At the time he entered his plea, defendant acknowledged
    that he forced the victim to get in a vehicle with him,
    took her to his home, held her at knifepoint against
    her will, and refused to allow her to leave until the
    police arrived and arrested him.  The factual basis
    satisfies the requirements for first-degree kidnapping.

(Appellate Division opinion, pp. 8-9, internal citations
omitted).

       After reviewing the record, this Court agrees with the
findings of the state courts.  The evidence against Petitioner in
this case was overwhelming.  Petitioner has not demonstrated
deficient representation by counsel.  As Respondents point out in
their brief, as of the date of Petitioner's sentencing, he could
have been subjected to a 30-year sentence for first-degree
kidnapping had he gone to trial and was found guilty.  Thus, it
could be said that counsel, in arranging the plea for a 20-year
sentence, sufficiently represented Petitioner.

       Additionally, Petitioner has not demonstrated that anything
counsel could have done with regard to the potential witness
would have changed the outcome of the proceedings or the first-
degree nature of the offense.

       For purposes of habeas relief, Petitioner has not shown, as
required by 28 U.S.C. § 2254(d), that the actions of the state
courts "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States," or
"resulted in a decision that was based on an unreasonable

                                14

determination of the facts in light of the evidence presented in the State court proceeding."  The state courts correctly applied the Strickland federal standard to Petitioner's ineffective assistance of counsel claims, and reasonably applied the facts of the case in the decisions.  Thus, Petitioner is not entitled to habeas relief for his ineffective assistance of counsel claims.[3]

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims

---

[3]  Petitioner also contends that the PCR court erred by failing to conduct an evidentiary hearing.  It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Nonetheless, Petitioner has failed to establish that he met the state-law threshold for an evidentiary hearing. See State v. Preciose, 129 N.J. 451 (1992) (setting forth the petitioner's burden to establish a prima facie case in order to obtain an evidentiary hearing).  As Preciose sets forth, an evidentiary hearing is required if there is a dispute of fact respecting matters that are not on the record.  In this case, a review of the record reveals that the PCR judge correctly applied the state law in denying the evidentiary hearing.

or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


                                        /s/ SUSAN D. WIGENTON
                                     United States District Judge

Dated: NOVEMBER 16, 2007